D.W. NELSON, Senior Circuit Judge,
dissenting.
I respectfully dissent because I disagree with the majority’s preemption analysis. The majority states that California Civil Procedure Code § 1800 is preempted by federal bankruptcy law. However, the reasoning by which the majority reaches this result would preempt any number of state laws governing voluntary assignments for the benefit of creditors because those laws have the effect of altering the incentives of various affected parties to initiate bankruptcy proceedings. Under the majority’s reasoning, any state statutory scheme, including those governing voluntary assignments for the benefit of creditors, that “give[s] state assignees or trustees avoidance powers beyond those that may be exercised by individual creditors trench[es] too close upon the exercise of the federal bankruptcy power.” Majority Op. at page 1205. State voluntary assignments, by definition, give the assignee more power than may be exercised by an individual creditor.[1] Because I believe that voluntary assignments for the benefit of creditors and related state statutes are not preempted by federal bankruptcy law, I cannot join the majority opinion.
Voluntary assignments for the benefit of creditors have their origins in English common law, and exist as an alternative to formal bankruptcy proceedings. See Credit Managers Ass’n v. Nat’l Indep. Bus. Alliance, 162 Cal.App.3d 1166, 1169-70, 209 Cal.Rptr. 119 (1984). California’s scheme requires that any assignment be for the benefit of all creditors, and does not allow preferences for any creditor or *1207 class of creditors. Cal.Civ.Proc.Code § 493.010(b)-(c). Creditors must be given notice and an opportunity to submit claims to the assignee. Cal.Civ.Proc.Code § 1802. These types of assignments are recognized by and incorporated in the federal bankruptcy code. See, e.g., 11 U.S.C. § 101(11)(B) (defining “custodian” as, inter alia, “assignee under a general assignment for the benefit of the debtor’s creditors”); § 543(d)(2) (excusing assignees appointed more than 120 days before the filing of a petition from turning debtor’s property over to the trustee).
In Pobreslo v. Boyd Co., the Supreme Court upheld a state scheme allowing voluntary assignment for the benefit of creditors, stating, “[I]t is apparent that Congress intended that such voluntary assignments ... should be regarded as not inconsistent with the purposes of the federal Act.” 287 U.S. 518, 526, 53 S.Ct. 262, 77 L.Ed. 469 (1933). When voluntary assignments contribute to bankruptcy’s goal of equitable distribution, “quite in harmony with the purposes of the federal Act, the provisions of [state voluntary assignment laws] serve to protect creditors against each other and go to assure equality of distribution unaffected by any requirement or condition in respect of discharge.” Id. Accordingly, the Supreme Court has held that state laws providing for discharge of debts are preempted by federal bankruptcy law, see, e.g., Int’l Shoe Co. v. Pinkus, 278 U.S. 261, 266, 49 S.Ct. 108, 73 L.Ed. 318 (1929), but has never suggested that state laws that regulate the distribution of assets in a voluntary assignment might face the same fate.
Yet the majority holds that section 1800 is preempted because it alters the incentives of creditors to initiate involuntary bankruptcy proceedings, thereby interfering with bankruptcy’s goal of equitable distribution of a debtor’s assets. The majority’s concerns about section 1800 are not distinguishable from concerns about voluntary assignment provisions generally. See, e.g., Majority Op. at pages 1203-05 (describing how state law interferes with the unique collective form of proceeding established by bankruptcy law; discussing use of “hand-picked” trustee in state proceedings). As the majority recognizes, Majority Op. at page 1205 n. 8, it is well established that there is a common-law right to make an assignment of property for the benefit of creditors. It is thus illogical that state laws that provide a forum for the equitable distribution of that property should be preempted by federal bankruptcy law.
The majority argues that if a preferential transfer is recovered by the assignee under section 1800, the same sum could not be recovered if a federal bankruptcy proceeding were initiated later. Majority Op. at pages 1204. But California’s preference recovery provision is, by design, virtually identical to the bankruptcy code’s preferential transfer statute. See 11 U.S.C. .§ 547(b), Cal. Civ. Proc. Code § 1800(b); see also Angeles Electric Co. v. Superior Court, 27 Cal.App.4th 426, 430-31, 32 Cal.Rptr.2d 660 (1994) (discussing intentional conformance, of section 1800 with federal bankruptcy law). If the same transfer can be avoided in both the state and federal systems, how does the state system interfere with bankruptcy’s goal of equitable distribution? Both the state and federal statutes serve to ensure equality of distribution and to deter the race to recover assets before insolvency. See, e.g., H.R. Rep. 95-595, 177-78, reprinted in 1978 U.S.C.C.A.N. 5963, 6138; see also Angeles Electric Co., 27 Cal.App.4th at 430-31, 32 Cal.Rptr.2d 660 (applying federal bankruptcy case law to interpret California statute). That California’s voluntary assignment system has such a provision makes it more capable of effectuating the *1208 equality of distribution that is the aim of the bankruptcy law; it does not necessarily interfere with bankruptcy’s goal of achieving equal distribution. The majority states that such state provisions are preempted because “they will affect the incentives of various parties as to whether they wish to avail themselves of federal bankruptcy law.” Majority Op. at page 1205. The purposes of federal bankruptcy law — as the majority sees it — are to provide discharge of debt and equal distribution of assets to creditors. Majority Op. at page 1203. I fail to see how a preference recovery provision that assists in equal distribution interferes with either goal.
When the majority’s reasoning is carried to its logical extension, it has the effect of pushing corporations threatened with insolvency from the less stigmatic, and less costly, voluntary assignment scheme into the world of federal bankruptcy. This should not have to be the case. I believe that both voluntary assignments and the bankruptcy system can “peaceably coexist” as twin mechanisms aimed at distributing the resources of an insolvent debtor. That voluntary assignments are incorporated into bankruptcy law, and that they have existed alongside bankruptcy law since its inception without causing an interference with the goal of equitable distribution, supports my conclusion that state voluntary assignments, and the laws that effectuate them, should not be preempted by bankruptcy law. “[Fjederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.” Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963). Here, Congress has not indicated that voluntary assignments, generally, or preferential transfer avoidance statutes, specifically, are to be preempted. Nor is the nature of the regulated activity — distribution of a debtor’s assets — such that it is impossible to conclude that the state and federal schemes could not co-exist. The majority privileges federal bankruptcy law by suggesting that these collective proceedings are the only ones that Congress intended for the equitable distribution of debt to creditors. Because I am convinced that the two systems should co-exist, I respectfully DISSENT.

. The majority asserts that it does not question the validity of assignments for the benefit of creditors and that it invalidates section 1800 because it gives the state assignee new powers that are not derived from trust or contract law.- Majority Op. at page 1205 n. 8. The state assignee, regardless of the powers granted by section 1800, distributes a debtor’s ' assets among creditors and otherwise exercises powers on behalf of all creditors, thus exercising powers greater than any one creditor could exercise. I find it thus difficult to draw a line between the majority’s arguments regarding section 1800 and problems with voluntary assignments, generally.